FILED
CLERK, U.S. DISTRICT COURT

3/19/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MMC _____ DEPUTY

# U.S. District Court
# Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: 1:25−mj−00095−LKE−1
## 2:25-mj-01553-DUTY

Case title: USA v. Buma                    Date Filed: 03/18/2025

---

Assigned to: Magistrate Judge
Lara K. Eshkenazi

**Defendant (1)**

**Johnathan Buma**                    represented by    **Kyla Wells**
                                                         Federal Defenders of New York
                                                         One Pierrepont Plaza − 16th Floor
                                                         Brooklyn, NY 11201
                                                         718−407−7403
                                                         Fax: 718−855−0760
                                                         Email: kyla_wells@fd.org
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Designation: Public Defender or Community*
                                                         *Defender Appointment*

**Pending Counts**                              **Disposition**

None

**Highest Offense Level (Opening)**

None

**Terminated Counts**                           **Disposition**

None

**Highest Offense Level**
**(Terminated)**

None

**Complaints**                                  **Disposition**

18:1905.M

---

**Plaintiff**

**USA**                              represented by    **Alexander Mindlin**
                                                        U.S. Attorney's Office
                                                        271 Cadman Plaza East

Brooklyn, NY 11201
718−254−6433
Fax: 718−254−6076
Email: alexander.mindlin@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/18/2025 | 4 | ORDER: This order is entered pursuant to Federal Rule of Criminal Procedure 5(f) to confirm the prosecution's disclosure obligations under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations as to Johnathan Buma. Ordered by Magistrate Judge Lara K. Eshkenazi on 3/18/2025. (DW) (Entered: 03/19/2025) |
| 03/18/2025 | 3 | WAIVER of Rule 5(c)(3) Hearing by Johnathan Buma (DW) (Entered: 03/19/2025) |
| 03/18/2025 | 2 | ORDER Setting Conditions of Release as to Johnathan Buma (1) $100,000. Ordered by Magistrate Judge Lara K. Eshkenazi on 3/18/2025. (DW) (Entered: 03/19/2025) |
| 03/18/2025 |  | Minute Entry for proceedings held before Magistrate Judge Lara K. Eshkenazi:Arraignment as to Johnathan Buma (1) Count Complaint held on 3/18/2025, Attorney Appointment Hearing as to Johnathan Buma held on 3/18/2025, Initial Appearance in Rule 5(c)(3) Proceedings as to Johnathan Buma held on 3/18/2025. AUSA Alexander Mindlin present. Defendant present with FDNY Kyla Wells for arraignment purposes only. Government agent sworn on the record. Defendant arraigned on the Removal complaint to the Central District of California. Defendant waived the Identity hearing. The government consented to a $100,000 bail application. The court granted the bail application. Defendant advised of the bond obligations and signed the bond. The date for the defendant to appear in the Central District of California will be given to defense counsel once a date is set. Rule 5F warning given to the government. (FTR Log #3:58−4:16 3/18/2025.) (DW) (Entered: 03/19/2025) |
| 03/18/2025 |  | Arrest (Rule 40) of Johnathan Buma (DW) (Entered: 03/19/2025) |
| 03/18/2025 | 1 | RULE 40 AFFIDAVIT by USA as to Johnathan Buma by Affiant RULE 5 AFFIDAVIT/ Central District of California. (DW) (Entered: 03/19/2025) |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                  -v-

  Johnathan Buma,

  Defendant(s).

25 MJ 95
<u>ORDER</u>

Lara Eshkenazi, United States Magistrate Judge:

      This Order is entered, pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No 116–182, 134 Stat. 894 (Oct. 21, 2020), to confirm the Government's disclosure obligations under *Brady* v. *Maryland*, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations.

      The Government must disclose to the defense all information "favorable to an accused" that is "material either to guilt or to punishment" and that is known to the Government. *Id.* at 87. This obligation applies regardless of whether the defendant requests this information or whether the information would itself constitute admissible evidence. The Government shall disclose such information to the defense promptly after its existence becomes known to the Government so that the defense may make effective use of the information in the preparation of its case.

      As part of these obligations, the Government must disclose any information that can be used to impeach the trial testimony of a Government witness within the meaning of *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny. Such information must be disclosed sufficiently in advance of trial in order for the defendant to make effective use of it at trial or at such other time as the Court may order.[1]

---

[1] This Order does not purport to set forth an exhaustive list of the Government's disclosure obligations.

The foregoing obligations are continuing ones and apply to materials that become known to the Government in the future. These obligations also apply to information that is otherwise subject to disclosure regardless of whether the Government credits it.

In the event the Government believes that a disclosure under this Order would compromise witness safety, victim rights, national security, a sensitive law-enforcement technique, or any other substantial government interest, it may apply to the Court for a modification of its obligations, which may include in camera review or withholding or subjecting to a protective order all or part of the information otherwise subject to disclosure.[2]

For purposes of this Order, the Government has an affirmative obligation to seek all information subject to disclosure under this Order from all current or former federal, state, and local prosecutors, law enforcement officers, and other officers who have participated in the prosecution, or investigation that led to the prosecution, of the offense or offenses with which the defendant is charged.

If the Government fails to comply with this Order, the Court, in addition to ordering production of the information, may:

(1) specify the terms and conditions of such production;

(2) grant a continuance;

(3) impose evidentiary sanctions;

(4) impose contempt or other sanctions on any lawyer responsible for violations of the Government's disclosure obligations, or refer the matter to disciplinary authorities;

(5) dismiss charges before trial or vacate a conviction after trial or a guilty plea; or

(6) enter any other order that is just under the circumstances.

---

[2] The Classified Information Procedures Act sets forth separate procedures to be followed in the event that the Government believes matters relating to classified information may arise in connection with the prosecution. *See* 18 U.S.C. app. 3 §§ 1 *et seq.*

SO ORDERED.

Dated: March 18, 2025
BROOKLYN, NY

S / Lara Eshkenazi
United States Magistrate Judge

UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| | | |
|---|---|---|
| United States of America | ) | Case No. 25 MJ 95 |
| v. | ) | |
| Johnathan Perna | ) | Charging District's Case No. 25 MJ 01553 |
| Defendant | ) | |

### WAIVER OF RULE 5 & 5.1 HEARINGS
#### (Complaint or Indictment)

I understand that I have been charged in another district, the (name of other court) Central District of California .

I have been informed of the charges and of my rights to:

    (1) retain counsel or request the assignment of counsel if I am unable to retain counsel;

    (2) an identity hearing to determine whether I am the person named in the charges;

    (3) production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

    (4) a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

    (5) a hearing on any motion by the government for detention;

    (6) request a transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

    ☒ an identity hearing and production of the warrant.

    ☐ a preliminary hearing.

    ☐ a detention hearing.

    ☐ an identity hearing, production of the judgment, warrant, and warrant application, and any preliminary or detention hearing to which I may be entitled in this district. I request that any preliminary or detention hearing be held in the prosecuting district, at a time set by that court.

    I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date: 3/18/25

_____
Defendant's signature

_____
Signature of defendant's attorney

_____
Printed name of defendant's attorney

This document has not been officially approved by the Administrative Office or the Judicial Conference of the United States.

UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF NEW YORK

**United States of America**                     Case No.   25 MJ 95

**v.**   Johnathan Buma   , *Defendant*

## ORDER SETTING CONDITIONS OF RELEASE AND APPEARANCE BOND

### RELEASE ORDER

It is hereby ORDERED that the above-named defendant be released subject to the Conditions of Release below and:

( ☐ )   On **Personal Recognizance** on the defendant's promise to appear at all scheduled proceedings as required, or

( ☑ )   Upon **Bond** executed by the defendant in the amount of $   100,000   , which shall be

☑ unsecured;  ☐ cosigned by the financially responsible sureties identified on this bond;

☐ secured by Collateral set forth on the Appearance Bond Supplement.

### CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to the following conditions, which the Court finds are the least restrictive conditions necessary to reasonably assure the appearance of the defendant as required and the safety of any other person and the community:

(1)   The defendant must appear in court as required and surrender as directed for service of any sentence imposed.

(2)   The defendant must not commit a federal, state or local crime while on release.

(3)   The defendant must cooperate in the collection of DNA sample if it is authorized by 34 U.S.C. § 40702.

(4)   The defendant must advise the Court in writing before making any change in residence or telephone number.

(5)   The defendant must not possess a firearm, destructive device or other dangerous weapon.

(6)   The defendant must not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner. Marijuana is still prohibited under federal law.

(7)   As marked below, the defendant must also:

( ☑ )   (a)   submit to pretrial supervision and report to Pretrial Services as directed. The defendant is subject to random home contacts and verification of employment as deemed appropriate to monitor compliance with the conditions of release. The defendant shall notify Pretrial Services as soon as possible of any arrests.

( ☐ )   (b)   ☐ continue or actively seek employment.  ☐ continue or start an education and/or vocational program.

( ☑ )   (c)   surrender any passport to Pretrial Services by   3/18/25   and not obtain a passport or any international travel document.

( ☒ )   (d)   not leave the following areas except for travel to and from court:  ☐ New York City;  ☐ Long Island;  ☐ New York State;  ☐ New Jersey;  ☐ Continental United States;  ☐ as approved by Pretrial Services;  ☑ other:  Central District of California, Utah & points in between necessary for travel

( ☐ )   (e)   not have any contact with the following individual(s), location or entity:  _____

( ☑ )   (f)   maintain residence at:  _____  or at a location approved by Pretrial Services.

( ☑ )   (g)   undergo testing, evaluation and/or treatment for substance abuse as directed by Pretrial Services.

( ☑ )   (h)   undergo evaluation and treatment for mental health problems, as directed by Pretrial Services.

( ☐ )   (i)   be subject to the following component of location monitoring, with technology as determined by Pretrial Services:

( ☐ )   (i)   **Curfew** – restricted to residence ☐ daily from  _____  to  _____ ; or ☐ as directed by Pretrial Services.

( ☐ )   (ii)   **Home Detention** – restricted to residence at all times, except for court appearances, court-ordered obligations, attorney visits, religious services, medical appointments, employment, education, substance abuse/mental health services and other activities approved in advance by Pretrial Services. Additionally, the Court permits:  _____ .

( ☐ )   (iii)   **Home Incarceration** – 24-hour lock-down at residence, except for medical necessities, court appearances, and any other activities ordered by the Court.

( ☐ )   (iv)   **Stand Alone Monitoring** – no residential restrictions; this condition will be used in conjunction with global positioning system (GPS) technology.

( ☐ )   (j)   pay all or part of cost of location monitoring, based on ability to pay as determined by Pretrial Services.

( ☑ )   (k)   Refrain from excessive use of alcohol   _____

## APPEARANCE BOND

I, the undersigned defendant, and each surety who signs the bond, acknowledge that I have read this Order Setting Conditions of Release and Appearance Bond and have either read all the other conditions of release or have had those conditions explained to me. (If the bond is secured by collateral, complete Appearance Bond Supplement.)

| _____ , Surety | _____ Address | _____ Date |
| _____ , Surety | _____ Address | _____ Date |
| _____ , Surety | _____ Address | _____ Date |

## RELEASE OF THE BOND

This appearance bond may be terminated at any time by the Court. This bond will be satisfied, and the collateral will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

## FORFEITURE OF THE BOND

If the defendant does not comply with the conditions set forth in this Order Setting Conditions of Release and Appearance Bond, this appearance bond may be forfeited and the Court may immediately order the amount of the bond and any collateral to be surrendered to the United States. At the request of the United States, the Court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT – YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

- Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.
- While on release, if you commit a federal felony offense, the punishment is an additional prison term of not more than ten years, and for a federal misdemeanor offense, the punishment is an additional prison term of not more than one year. This sentence will be consecutive to (i.e., must follow) any other sentence you receive.
- It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the Court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.
- If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:
    (1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;
    (2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or more than $250,000 or imprisoned for not more than five years, or both;
    (3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;
    (4) a misdemeanor – you will be fined not more than $100,000 or imprisoned for not more than one year, or both.
- A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## ACKNOWLEDGMENT OF THE DEFENDANT

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
Defendant's Signature

**Release of the Defendant is hereby ordered on**  3/18/25 .                                        , US  M J
                                        Date                         Judicial Officer's Signature

NJM:AFM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -

JOHNATHAN BUMA,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

AFFIDAVIT IN SUPPORT OF REMOVAL TO THE CENTRAL DISTRICT OF CALIFORNIA
(Fed. R. Crim. P. 5)

Case No. 25-MJ-95

EASTERN DISTRICT OF NEW YORK, SS:

        Steven Deck, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigations ("FBI"), duly appointed according to law and acting as such.

        On or about March 17, 2025, JOHNATHAN BUMA was taken into custody at a departure gate at John F. Kennedy International Airport ("JFK Airport"), where he was a ticketed passenger waiting to board an outbound international flight.

        On or about March 18, 2025, a criminal complaint was filed in the United States District Court for the Central District of California, charging JOHNATHAN BUMA with violating Title 18, United States Code, Section 1905 (disclosure of confidential information).

        The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1]    Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause as to the defendant's identity, I have not described all the relevant facts and circumstances of which I am aware.

1.      On or about March 18, 2025, a complaint issued in the United States District Court for the Central District of California (the "Complaint") charging JOHNATHAN BUMA with violating Title 18, United States Code, Sections 1905.  A true and correct copy of the Complaint is attached hereto as Exhibit A.

2.      The defendant was arrested at JFK Airport on March 17, 2025, at approximately 10:00 P.M. by FBI personnel.  The defendant stated to me that his name was "Johnathan Buma."  I also recognized the defendant from previous encounters in the course of this investigation and from photographs of the defendant that I have previously reviewed.

3.      Based on the foregoing, I submit that there is probable cause to believe that the defendant is the JOHNATHAN BUMA charged in the Central District of California.

WHEREFORE, your deponent respectfully requests that the defendant JOHNATHAN BUMA be removed to the Central District of California so that he may be dealt with according to law.

Steven Deck
Special Agent
Federal Bureau of Investigation

Sworn to before me this
18th day of March, 2025

THE HONORABLE LARA K. ESHKENAZI
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

2

**EXHIBIT A**

AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)          ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| | **FILED**<br>CLERK, U.S. DISTRICT COURT<br><br>3/18/2025<br><br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: ___tsn___ DEPUTY |

United States of America

v.

Johnathan Buma,

Defendant

Case No.

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of November 2, 2023, in the county of Orange in the Central District of California, the

defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1905 | Disclosure of Confidential Information |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

Steven Deck, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:          March 18, 2025 at 6:36 a.m.

*Judge's signature*

City and state:   Los Angeles, California          Hon. Stephanie S. Christensen, U.S. Magistrate Judge
*Printed name and title*

AUSA: David Ryan

### AFFIDAVIT

I, Steven Deck, being duly sworn, declare and state as follows:

### I.  PURPOSE OF AFFIDAVIT

1.  This affidavit is made in support of a criminal complaint against Johnathan Buma ("BUMA"), for a violation of Title 18, United States Code, Section 1905 (Disclosure of Confidential Information).

2.  The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only, all amounts or sums are approximate, and all dates and times are on or about those indicated.

### II. BACKGROUND OF AGENT

3.  I am a Special Agent of the FBI and have been so employed since 2017.  Since approximately January 2018, I have been assigned to the FBI's New York Field Office, Counterintelligence Division.  During my tenure with the FBI, I have participated in counterespionage and counterintelligence investigations and, among other things, have conducted or participated in surveillance, the execution of search warrants,

1

and the review of stored electronic information for evidence of crime.  Through my experiences in the field and training relating to counterespionage and counterintelligence and related crimes, I am familiar with some of the tactics, methods, and techniques of United States persons who possess, or have possessed a United States Government security clearance and may choose to harm the United States by misusing their access to sensitive United States Government information.  I am also familiar, though my training and experience, with the use of cellphones and computers in criminal activity and the forensic analysis of electronically stored information.

### III.  LEGAL BACKGROUND

4.    Title 18, United States Code, Section 1905 provides: "Whoever, being an officer or employee of the United States or of any department or agency thereof, any person acting on behalf of the Federal Housing Finance Agency, or agent of the Department of Justice as defined in the Antitrust Civil Process Act (15 U.S.C. 1311–1314), or being an employee of a private sector organization who is or was assigned to an agency under chapter 37 of title 5, publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity,

confidential statistical data, amount or source of any income,
profits, losses, or expenditures of any person, firm,
partnership, corporation, or association; or permits any income
return or copy thereof or any book containing any abstract or
particulars thereof to be seen or examined by any person except
as provided by law; shall be fined under this title, or
imprisoned not more than one year, or both; and shall be removed
from office or employment."

### IV. <u>SUMMARY OF PROBABLE CAUSE</u>

5.    BUMA has worked for the FBI in various capacities for
over 15 years.  From 2013 to February 2022, BUMA focused on
counterintelligence and counterproliferation matters.  Beginning
in 2018, he was assigned to the FBI's Los Angeles Field Office
("FBI-LA"), Orange County Resident Agency ("OCRA").  Until
December 2022, BUMA's responsibilities included managing
confidential human sources ("CHSs").  From in or around January
2023 to November 2023, he was assigned to a surveillance unit.

6.    In 2022, BUMA began to voice his concerns to various
government agencies, the United States Congress, and members of
the news media, regarding the FBI's handling of certain
investigations in which he was involved in his capacity as a
special agent tasked with managing CHSs.[1]  On Friday, October 27,
2023, BUMA printed approximately 130 files from the FBI's

---

[1] The government is informing the Court of BUMA's complaints
in order to provide the Court with all relevant facts.  The
Government does not rely on BUMA's complaints to establish
probable cause.  Rather, as described below, the government
relies on the facts and circumstances surrounding BUMA's
printing, removal, and dissemination of confidential
information.

internal network, several of which summarized information provided to the FBI by CHSs, some of which were clearly marked with warnings that made clear that the information was to be protected.  BUMA also printed nine text-file documents which contained text that had been copied and pasted from reports which were marked in such a way that made clear that the information must be protected, and which summarized information provided to the FBI by CHSs.  BUMA also printed out screenshots of messages he exchanged with an FBI CHS via an encrypted messaging application ("Encrypted Messaging Application 1").  After printing those materials, BUMA emailed FBI supervisors about his intent to go on leave without pay, then left the FBI office.

7.    On Monday, October 30, 2023, BUMA posted several messages on a social networking site containing excerpts from a draft of a book he was writing about his career at the FBI. Between October and December 2023, BUMA emailed a draft of the book to various individuals.  The book draft contained information that BUMA obtained through his position as an FBI Special Agent that relates to the FBI's efforts and investigations into a foreign country's weapons of mass destruction ("WMD") program.  On November 2, 2023, BUMA wrote an email to various personal associates assisting him in negotiating a book deal with a publishing company.  In that email, BUMA purported to "give authorization" to the recipients to share information that was subject to restrictions against

dissemination and that he became aware of in his capacity as an FBI special agent.

8.    In the fall of 2023, a U.S. media entity published an article containing confidential information related to reporting that was provided by a CHS to the FBI related to an associate of a foreign government official and that BUMA knew he had a duty to protect.  The article addressed the same events as those discussed in certain of the Encrypted Messaging Application 1 messages and documents that BUMA printed from the FBI's internal network on October 27, 2023, including documents which were clearly marked in a way to notify BUMA that he had a duty to protect the information.

## V.  <u>STATEMENT OF PROBABLE CAUSE</u>

### A.  **BUMA's Employment with FBI**

9.    Based on my review of FBI employment records and my discussions with other FBI personnel, I know the following:

10.   BUMA has been employed by the FBI since September 2008.  In 2009, BUMA executed a nondisclosure agreement wherein he acknowledged having received a security indoctrination concerning the nature and protection of sensitive information subject to restrictions against dissemination.  As part of the NDA, BUMA was advised as to the potential criminal consequences of the unauthorized disclosure, unauthorized retention, or negligent handling of information subject to such restrictions.

11.   Beginning in 2013 and continuing through in or around February 2022, BUMA served with the FBI as a Special Agent and Supervisory Special Agent focused on counterintelligence and

counterproliferation matters.  Between 2018 and 2022, BUMA held
roles at OCRA, within FBI-LA, directly related to human
intelligence and the management of the CHS policy.  BUMA
submitted a resignation letter to the FBI on March 16, 2025.

12.  On July 15, 2023, BUMA testified before the United
States Senate Committee of the Judiciary regarding a
"whistleblower complaint" he claimed to have filed with FBI's
Inspection Division.[2]  Based on my review of the transcript of
that testimony, I know that, according to BUMA, he filed that
complaint in or around January 2022.  According to BUMA's
testimony, his complaint described "in detail numerous acts of
intelligence suppression of [BUMA's] reporting related to
foreign intelligence and the Capitol riots, [and] retaliatory
acts and defamation of [his] own character through a hyperbolic
narrative of administrative non-compliance . . . ."  According
to BUMA's testimony, in November 2022, he had also filed a
complaint with the Equal Employment Opportunity Commission.
Also according to BUMA, following his filing of the EEOC
complaint, he was reassigned to an FBI surveillance squad
located in Orange Country, California.

13.  According to information provided by the Department of
Justice's Office of Inspector General ("OIG"), BUMA filed a
complaint with the FBI's Inspection Division in January 2022,
asserting that he had been retaliated against as a result of his

_____

[2] Statement of Johnathan C. Buma, United States Senate
Committee of the Judiciary (July 15, 2023), available at
https://www.docdroid.net/hbEcLPL/jonathan-buma-judiciary-jul-15-
pdf.

activities as a whistleblower.  FBI's Inspection Division referred that complaint to OIG, which ultimately declined to pursue the matter.  BUMA and/or his representatives have subsequently filed two other complaints with OIG, which currently remain pending.

14.  According to FBI personnel records, in or around January 2023, BUMA was removed from his roles relating to human intelligence and management of CHSs.  At that time, BUMA was reassigned to a surveillance unit based in OCRA within FBI-LA.

15.  In the fall of 2023, a U.S. media entity ("U.S. Media Entity 1") published a video interview of BUMA, in which he discussed details of intelligence reporting he received, and expressed his dissatisfaction with how that information was investigated within the FBI.  In that interview, BUMA stated that he made a whistleblower disclosure to FBI's Inspection Division regarding his dissatisfaction, and that he was retaliated against after making that disclosure

**B.    October 27, 2023: BUMA Prints Sensitive Documents from FBI Servers**

16.  According to information seized from a phone in BUMA's possession pursuant to a federal search warrant, on October 27, 2023, BUMA sent a message to a personal associate stating, "took a halve a Loraz, two beers, a Cialis, and a Bystolic to get it down.  It's all [in] Anticipation of what I know k [sic] need to get and do while there for five or so hours today; which mu [sic] be my last with my beloved bureau, which gave me so many opportunities to shine previously:("

7

17.   Based on activity logs maintained by the FBI, BUMA's last day in the FBI-LA's OCRA office was Friday, October 27, 2023.  According to information provided by BUMA's supervisor, at approximately 6:17PM on October 27, 2023, BUMA wrote an email to FBI supervisors discussing his complaints regarding his employment with the FBI and his reassignment to the surveillance unit.  In that email, BUMA also stated that he had exhausted his paid leave and planned to go on leave without pay starting Monday, "since I came in the office today to handle administrative matters."  The next week, BUMA did not report for duty, and did not respond to communications from his supervisor inquiring about his plans and status.  On Thursday November 2, 2023, BUMA's supervisor informed him via email that he was being placed on leave without pay status.

18.   Based on my review of FBI surveillance video footage, on Friday, October 27, 2023 — his last day at FBI prior to assuming his "leave without pay" status — BUMA arrived at OCRA shortly before 1:30PM.  He arrived wearing a black backpack.  He remained at OCRA for approximately five hours, until approximately 6:30PM.  During that time, based on my review of FBI internal computer activity logs, BUMA accessed and printed approximately 130 files from FBI's internal network (the "Confidential Material").

19.   The Confidential Material included (1) at least eight sensitive information reports relating to a foreign adversary; (2) at least eight reports relating to CHS reporting between

2021 and 2022; and (3) at least one product derived from a sensitive collection method.

20.    Additionally, based on my discussions with FBI personnel who reviewed the documents that BUMA printed, BUMA also printed from FBI's internal network on October 27, 2023, nine text-file documents, all of which have file names ending with the ".txt" extension.  Based on the FBI's review, the information contained in these text-file documents appeared to be copied verbatim from sensitive FBI reports that summarize information reported to the FBI by CHSs and were marked in such a way to indicate that BUMA had a duty to protect the information.  The original reports, unlike the text files, contain various markings reflecting that the reports contain information which BUMA had a duty to protect.  Based on my experience and training, I believe that BUMA likely created these text files in order to duplicate the contents of the original FBI reports in a manner that obscures the restrictions against disclosing the information in the reports and thereby evade detection.

21.    Additionally, BUMA printed out screenshots of messages that appear to have been between BUMA and an FBI CHS and were sent via Encrypted Messaging Application 1.

**C.    October 30, 2023: BUMA Does Not Report for Duty at FBI and Posts Online Excerpts from His Draft Book About the FBI**

22.    In the early morning hours of October 30, 2023, BUMA made approximately eight posts on a personal social networking account (Account 1).  Based on my review the posts appeared to

be excerpts from several chapters of a book that BUMA is writing
about the FBI.

23.   Each post contains a full page of single-spaced text.
The first page of text appears under the header, "Preface."  It
begins, "This book is about my life as a special agent in the
Federal Bureau of Investigation."  The "Preface" goes on to
state that BUMA's "primary goal is to describe how, and more
importantly, why [he] became a whistleblower with an urgent
message for the American people that needs to be delivered right
away before it's too late."  BUMA then wrote, "[a]fter drafting
this manuscript, I will resign and travel around the country NOT
to promote myself but to promote the importance of the
information I sacrificed my career to dig out for the American
people with hope it's not too late."

24.   The next post contains a single-spaced page of text
under the header, "Subject: Chapter 1 – My life leading up to
the FBI."  In that post, BUMA describes his childhood and how
those who knew him "would have never believed" that he would
become "one of the nation's top performing counterintelligence
agents at catching and flipping Russian spies, combatting
international corruption, trans-national organized crime, and
foreign influence," nor that he "would become the most
significant whistleblower in FBI history."

25.   The next several posts contain single-spaced pages of
text detailing BUMA's various assignments in the FBI.  The final
post, under the header "Chapter 8 – Untouchables – Edit 1" ends
with, "What happens when certain components of the government

10

become compromised?  What happens when an FBI agent sees this from deep inside the Bureau and tries to investigate the pressing matter through official channels, but is prevented from doing so and then retaliated against—blackballed and cast aside by fellow agents he thought were his friends?  An agent would have no choice but to do what I was forced to do – continue investigating the core matter of concern in compliance with policy as long as possible, and then use legal instruments for personal protection as long as possible until muzzled, and then plead with management to do the right thing, and then take the information over the Director's head directly to . . . Congress, and then, if suppressed by Congress, go to the media and beg the people to do the right thing and save their country.  That is what I did and now am doing.  I feel I have no choice."

26.  According to BUMA's FBI-LA supervisor, the supervisor attempted to contact BUMA on several occasions beginning on October 30, 2023, and did not receive a reply until November 9, 2023.  BUMA's supervisor formally notified BUMA on November 2, 2023, of his placement on leave-without-pay status.  On November 7, and again on November 8, BUMA's supervisor wrote to BUMA to ask if the supervisor could go to BUMA's residence to collect his government property, including his firearm, badge, and FBI credentials.  On the evening of November 9, BUMA responded and arranged with the supervisor to meet at OCRA on the morning of November 13, 2023, to turn in his government property.

**D.    October-December 2023: BUMA Sends Personal Associates Book Drafts Containing Information About FBI Investigations**

27.    According to email provider records, between October and December 2023, BUMA, using his personal email account (Account 2), emailed chapters of his book draft to various personal associates.  Specifically, BUMA emailed chapters of his book to the personal email accounts of multiple associates and family members.  According to FBI personnel who reviewed the book chapters pursuant to a federal search warrant, the book chapters contain information that relates to the FBI's efforts and investigations into a foreign country's WMD program.

28.    On November 2, 2023, BUMA exchanged emails regarding a publishing deal that BUMA was seeking with a publishing company for his book.  In one such email, directed to a representative for the publishing company, an individual on the email chain ("Associate 1")—who was identified in other emails as BUMA's Business and Public Relations Manager—wrote, "the following is the senior team that has permission to speak with you on all aspects of the story and book being presented to you at [the publishing company]" regarding the "life story of whistleblower Jonathan Buma."  The email then lists eight individuals, and states, "we are sending the copies of the first draft and supporting documents" to one of those eight listed individuals, who "has been in communication with you about the story."

29.    Approximately twenty minutes later, BUMA wrote an email to Associate 1 (who was one of the eight listed individuals), in which he purported to "give authorization" to

12

the recipients to share information that was subject to
restrictions against dissemination and that he became aware of
in his capacity as an FBI special agent.

30.  On December 5, 2023, and again on June 28, 2024, the
FBI's Prepublication Review Office confirmed that it has not
received any contact from BUMA requesting to review a draft book
to determine whether it contains information that is subject to
restrictions against dissemination.

**E.   Fall 2023: Media Entity Publishes Same Confidential
Information BUMA Printed on October 27, 2023**

31.  In the fall of 2023, U.S. Media Entity 1 published an
article that contained what it claimed to be information
provided to the FBI by a CHS.  This information related to an
associate of a foreign government official.  The article states
that its sources for the article include two sources who had
knowledge of what the CHS reported to the FBI.

32.  Based on my review of the documents that BUMA printed
on October 27, 2023, I know that BUMA printed from the FBI
internal network the driver's license photograph and law
enforcement database reports identifying the true name and
personal identifying information of the CHS, and a report that
addresses the same events discussed in the Fall 2023 article.
The Encrypted Messaging Application 1 messages between BUMA and
the CHS that BUMA printed out on October 27, 2023, as discussed
above, also address the same events discussed in the Fall 2023
article.

33.  Furthermore, according to the messages seized from a phone in BUMA's possession, in the late fall of 2023, BUMA sent a message to several individuals discussing his involvement in several recently published news articles about the CHS. Specifically, in reference to one such article, BUMA wrote, "[t]his is a big one," and stated, "[m]y work is discussed 2/3 tue [sic] way down."  BUMA added that he had "worked w[ith the author] to make this happen."  Later that same day, BUMA sent another message linking to the Fall 2023 article by U.S. Media Entity 1, adding "[h]ere's the new one."  A few minutes later, BUMA wrote that he had "spoke with [CHS] again this morning to ensure we are in good terms and that it was not my decision to burn him as an FBI source."

34.  Accordingly, I believe BUMA disclosed, either directly or indirectly, certain of the Confidential Materials that he printed on October 27, 2023, to third parties involved in the publication of the Fall 2023 article.

**F.  November 13, 2023: BUMA Possesses FBI Information in his Residence**

35.  On November 13, 2023, federal law enforcement officials executed federal search warrants for BUMA's residence and person.  According to FBI Special Agents who executed those warrants, during the search of BUMA's residence, agents found and seized numerous documents including: first, a one-page FBI document containing content related to the use of aliases and false information by FBI CHSs; and second, a 15-page document

containing a compilation of FBI emails and attachments from between December 2021 and June 2023.

36. During the search of BUMA's residence, agents did not locate any of the documents that BUMA printed on October 27, 2023.

**G.  December 2023: BUMA Possesses FBI Information on his Personal Email and Cloud Services Accounts**

37. In December 2023, the FBI obtained records pursuant to federal search warrants for Account 2 and another online service provider account (Account 3). Based on my review of those records, I know the following.

38. Account 3 contained three photographs that appear to be printouts of an email thread between BUMA and an FBI intelligence analyst summarizing information provided to the FBI by a CHS who was handled by BUMA. Based on the photographs, it appears the emails were sent on or about May 14, 2020. The metadata for the images shows that all three were taken on May 26, 2020, in the vicinity of BUMA's residence in Rancho Santa Margarita, California.

39. These same photographs were also found during a search of Account 2.

40. On the evening of March 17, 2025, BUMA was arrested at JFK International Airport in New York City. BUMA was at a departure gate and was a ticketed passenger on a flight to a foreign country leaving later on March 17, 2025.

**VI. <u>CONCLUSION</u>**

41. For all of the reasons described above, there is

15

probable cause to believe that BUMA has committed a violation of Title 18, United States Code, Section 1905 (Disclosure of Confidential Information).

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 18th day of March, 2025.

_____
THE HONORABLE STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE

16